FILED

JAN 3 1 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**JAN H. WITT,**

                    Plaintiff,                                    Civil No. 09-6246-PK

          v.                                                       **OPINION AND
                                                                    ORDER**

**MICHAEL J. ASTRUE,**

                    Defendant.

_____

PAPAK, Magistrate Judge:

        Plaintiff Jan H. Witt ("Witt") seeks judicial review of the Social Security Commissioner's

final decision denying her application for Supplemental Security Income. This court has jurisdiction

under 42 U.S.C. §§ 405(g) and 1383(c). All parties have consented to entry of final judgment by a

Magistrate Judge in accordance with F.R.C.P. 73 and 28 USC § 636(c). For the reasons that follow,

1 - OPINION AND ORDER

the Commissioner's decision is affirmed.

## BACKGROUND

Born in 1965 (Tr. 80)[1], Witt has an eleventh-grade education (Tr. 101) and alleges disability since January 1, 1995 (Tr. 80), due to bipolar disorder. Tr. 95. The Commissioner denied Witt's application initially and upon reconsideration, and an Administrative Law Judge ("ALJ") held a hearing on February 2, 2004. Tr. 762-97. The ALJ found Witt not disabled on June 23, 2004. Tr. 552-64. On April 5, 2005, the Appeals Council remanded the case back to the ALJ, and ordered the ALJ to obtain additional medical evidence pertaining to Witt's mental impairments, and to further evaluate those impairments under the Commissioner's regulations. Tr. 566-67. The ALJ held further hearings on January 9, 2006 (Tr. 798-800), April 30, 2006 (Tr. 801-26), November 13, 2006 (Tr. 827-48), and on March 8, 2007. Tr. 849-73. The ALJ subsequently found Witt not disabled on April 11, 2007. Tr. 18-32. The Appeals Council denied review of the matter on June 30, 2009 (Tr. 9), and Witt now appeals to this court.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Where the record shows drug or alcohol abuse, the Commissioner must determine whether the abuse materially contributes to any finding of disability. 20 C.F.R. § 416.935.

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer February 17, 2010 (Docket #11).

if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. § 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the ALJ determines the impairment meets or equals a listed impairment, the claimant is disabled. 20 C.F.R. § 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's RFC. The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 416.920(e); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 416.920(a)(4)(iv).

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v); *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 416.966; 416.920(g).

Additionally, if the Commissioner finds a claimant disabled and there is medical evidence

of drug addiction or alcoholism, the Commissioner must determine if the substance abuse is a "contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a). Here the Commissioner determines which, if any, mental or physical impairments would remain if the claimant ceased using drugs or alcohol. 20 C.F.R. § 416.935(b)(2). If the remaining limitations are not disabling, the Commissioner will find that the drug or alcohol use is a contributing factor to the claimant's disability, and find the claimant not disabled. 20 C.F.R. § 416.935(b)(2)(i). Notably, the plaintiff bears the burden of showing that drug or alcohol use is not material. *Parra v. Astrue*, 481 F.3d 742, 748-50 (9th Cir. 2007).

## THE ALJ'S FINDINGS

The ALJ found Witt's bipolar disorder and polysubstance abuse related to alcohol and methamphetamines "severe" at step two in the sequential proceedings. Tr. 20. The ALJ found that, including the effects of her substance abuse, Witt met the Commissioner's listings for affective disorders and substance addiction disorders. Tr. 20. The ALJ thus found Witt disabled when he included the effects of her drug and alcohol abuse in his analysis. *Id.*

The ALJ subsequently determined that, *without* the effects of her drug and alcohol use, Witt would retain the following RFC:

> [T]he claimant has the residual functional capacity to work without external limitations; she has moderate limitations in following detailed instructions, in interacting appropriately with the general public, and in working with others as a part of a team; she should not be exposed to workplace hazards.

Tr. 21. In making this assessment the ALJ found the testimony of Witt and numerous lay witness not entirely credible. Tr. 30. The ALJ found that, if Witt ceased substance abuse, she could perform her past relevant work as a maid. Tr. 31. Though the ALJ thus found Witt not disabled at step four

4 - OPINION AND ORDER

in the sequential proceedings, he also made alternative step five findings. At step five, the ALJ also found that, if Witt ceased substance abuse, she could perform work in the national economy as a marker, packing line worker, and laundry folder. Tr. 31. The ALJ therefore concluded that Witt was not disabled under the Commissioner's regulations. Tr. 32.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Witt asserts that the ALJ made improper findings regarding the effects of her drug use, improperly evaluated the lay witness testimony, and consequently made erroneous findings at step

5 - OPINION AND ORDER

five in the sequential proceedings. She also asserts that the ALJ should have found her non-compliance with treatment a symptom of her disease. Because Witt's drug and alcohol use establishes that she is not eligible for an award of benefits, this court will not address the issue of her non-compliance with treatment.

## I.      The ALJ's Drug and Alcohol Analysis

The ALJ found Witt not disabled after excluding the effects of her drug and alcohol use upon her RFC. Tr. 31. Witt asserts that she would be disabled even if she ceased all drug and alcohol use. Pl.'s Opening Br. 10.

### A.      Evaluation of Drug and Alcohol Abuse[2]

When a claimant's record suggests drug and alcohol use, the ALJ conducts a two-stage analysis. After first proceeding through the five-step disability evaluation process without attention to the specific impact of drug and alcohol use, the ALJ must then determine which of the claimant's disabling limitations would remain disabling if the claimant stopped using drugs or alcohol. 20 C.F.R. § 416.935(b); *Parra*, 481 F.3d at 747. The claimant bears the burden of showing her drug or alcohol use is not material. *Parra*, 481 F.3d at 748-50.

### B.      Analysis

The ALJ conducted a length analysis finding that Witt would not be disabled once her drug and alcohol use was excluded from his findings. Tr. 20-31. The ALJ discussed Witt's medical

---

[2]Witt cites the Commissioner's internal "Emergency Teletype" manual in her explanation of the legal standards pertaining to drug and alcohol analysis. Pl.'s Opening Br. 10-11. Such sources are not binding upon the agency and are not appropriate authorities in federal court proceedings. *Parra*, 481 F.3d at 749.

record, her own testimony, and that of numerous lay witnesses. *Id.* Witt's challenge to this analysis

cites the opinion of psychologist H. F. Shellman, Ph.D., psychology resident Jean Hale, Psy. D.,

social worker Lynn Meininger, L.C.S.W., and case manager Anne Tlaker, M.A. Pl.'s Opening Br.

11-12. Witt also cites numerous hospital and emergency room admissions, and asserts that the ALJ

selectively read this record. *Id.* at 12-13.

### a.    Examining Psychologist H.F. Shellman, Ph.D.

Witt asserts, without explanation, that psychologist Dr. Shellman found that she had "a

severe impairment in verbal memory functioning. Pl.'s Opening Br. 11. Dr. Shellman evaluated

Witt on September 19, 2006. Tr. 733-38. Dr. Shellman diagnosed bipolar disorder, atypical

cognitive disorder with impairment in verbal memory, and cannabis abuse. Tr. 733. He also

assessed rule-out diagnoses of methamphetamine dependence and alcohol abuse. *Id.* Dr. Shellman

concluded that Witt had a "lower" than typical level of treatment motivation. Tr. 737. He prefaced

his evaluation with the following statement:

> [Witt] acknowledged that she has had a serious problem with
> methamphetamine use until she weaned herself from the drug while
> she was living with her grandmother. She says she was living with
> her grandmother from the time she was 18 until she was 19 or 20
> years of age. The critical question, of course, is did she stop using
> methamphetamine? Certainly, the fact that she was offered a plea
> agreement to enter a diversion program in later 2005 or early 2006
> suggests that she was under the influence of some mind altering
> substance at the time of the incident that produced charges against
> her. Most likely the substance was methamphetamine given her
> behavior . . . . Her story that someone might have put
> methamphetamine in her drink is certainly possible but,
> conservatively, somewhat improbable . . . . She smoked marijuana
> two days ago.

Tr. 734.

Dr. Shellman continued that, because Witt "insisted" that she is not abusing alcohol or other

substances, and because he had no definitive evidence otherwise, he would give her a bipolar

disorder diagnosis. He stated that he made his verbal memory functioning impairment diagnosis

upon testing, but was "unable to determine the cause of that impairment. It could be a consequence

of depression or of methamphetamine abuse. Again, there is no definitive evidence of the latter."

*Id.*

This report supports, rather than detracts from, the ALJ's finding that Witt's substance abuse

contributed to her alleged workplace limitations. Tr. 28. Dr. Shellman clearly stated that he could

not rule out the possibility that Witt's substance abuse contributed to her functioning. *Id.* This court

must affirm the ALJ's decision when it is based upon "inferences reasonably drawn." *Batson*, 359

F.3d at 1193. The ALJ's finding regarding Dr. Shellman's report and Witt's substance abuse is

based upon a proper review of the entire record.

### b.    Examining Psychology Resident Jean Hale, Psy.D.

Witt asserts that examining psychologist Dr. Hale "doubted" that Witt could perform

"meaningful" work based upon her processing scores. Pl.'s Opening Br. 11. Witt does not explain

the manner in which this opinion contradicts the ALJ's drug and alcohol analysis.

The record shows that clinical psychology resident Dr. Hale, under the supervision of

psychologist Gary Gregory, Ph.D., conducted a clinical examination of Witt on February 5, 1999,

following a Disability Determination Services ("DDS")[3] referral regarding Witt's present application

for benefits. Tr. 497-501. Drs. Hale and Gregory conducted a clinical interview and numerous

---

[3]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

psychological tests. *Id.* They diagnosed bipolar disorder and alcohol abuse in "sustained partial remission." Tr. 500. Their assessment contained two addendums. Tr. 501 The second, upon which Witt now relies, states that "It is doubtful that Ms. Witt has the stamina and persistence to perform any meaningful work at this time." Tr. 501. However, the first addendum, which Witt does not presently acknowledge, states:

> Shortly after this assessment, Ms. Witt's husband notified Curry County Human Services that [Witt] had stopped taking her medications for a few weeks and had been using alcohol. This might have effected Ms. Witt's ability to tolerate the testing situation. She should be strongly encouraged to take her medications as prescribed and abstain from using alcohol and other drugs. Recent information indicates that she is taking medication as prescribed now and has agreed to abstain from alcohol. Tr. 501.

This evidence establishes that Witt was using alcohol at the time of her assessment by Drs. Hale and Gregory. Witt's assertion that their opinion supports her contention that she would be disabled without the influence of drug or alcohol abuse is therefore not supported by the record.

### c.    Social Worker Lynn Mineinger, L.C.S.W.

Witt argues, again without addressing the ALJ's drug and alcohol analysis, that Curry County Mental Health ("CCMH") social worker Meininger did not believe that Witt could perform "meaningful" work. Pl.'s Opening Br. 11. Witt's indicated citations point to statements made by Meininger in December 1999 and June 2001. *Id.* (citing Tr. 158, 249).

On December 21, 1999, Meininger wrote a letter to the record stating that Witt received mental health treatment at CCMH, and that "she has been cooperative with treatment plans and keeping her appointments." Tr. 158. Meininger also stated that, "I do not feel at this time that Mrs. Witt has the stamina or persistence to perform any meaningful work." *Id.* Meininger made no

comment regarding Witt's drug and alcohol use, or the extent to which Witt was or was not disabled without drug and alcohol use.

Disability determinations are reserved for the Commissioner. 20 C.F.R. § 416.927(e)(1). Further, Meininger provides no supporting clinical notes for her opinion, and does not address the matter of Witt's alcohol and drug use. For these reasons, Witt fails to establish that Meininger's December 1999 statement supports a finding that she remained disabled without including the effects of her drug and alcohol use.

Witt also points to a June 22, 2001 statement by Meininger. Pl.'s Opening Br. 12 (citing Tr. 249). There Meininger wrote that she felt Witt should receive benefits, and stated that Witt had been hospitalized and under a six-month psychiatric commitment in January 2001. Tr. 249. Meininger again made no reference to the effect of Witt's drug and alcohol use upon her alleged disability.

### d.    Case Manager Anne Tlaker, M.A.

Witt contends that a November 3, 2006 report submitted by her CCMH case manager, Anne Tlaker, also establishes that she would remain disabled without drug and alcohol use. Pl.'s Opening Br. 12 (citing Tr. 746-47).

Tlaker completed a "supplemental questionnaire" on November 3, 2006, and submitted it to Witt's attorney. Tr. 746-47. Tlaker stated that Witt carries a diagnosis of bipolar disorder mixed with psychotic features, although Tlaker concurrently stated that this could be a rule-out diagnosis. Tr. 746. Tlaker also completed a questionnaire addressing Witt's ability to function in the workplace without consideration of limitations stemming from drug or alcohol abuse. Tr. 746-47. Here Tlaker endorsed "unable to meet competitive standards" or "no useful ability to function" in every category

presented. Tr. 747. Tlaker provided no explanation for her endorsements. *Id.*

The ALJ discussed Tlaker's report in considerable detail. Tr. 28-30. The ALJ first found Tlaker's report that Witt had been hospitalized during periods of abstinence inconsistent with the medical record. Tr. 28. The record shows that Witt physicians made alcoholism or substance abuse diagnoses in the course of Witt's respective hospitalizations throughout the period in question. Tr. 176, 192, 196, 202, 210, 235, 239, 346, 379, 431, 494, 649. The ALJ noted that Tlaker's assertion to the contrary was clearly unsupported by the record.

The ALJ also noted that Witt is not credible regarding her alleged abstinence, and therefore rejected Tlaker's statements to the extent they were based upon Witt's reports of abstinence. Tr. 29. Witt does not challenge the ALJ's credibility finding regarding this matter. The ALJ may reject testimony predicated upon the reports of a claimant deemed not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (medical personnel findings based upon unreliable claimant testimony); see also *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)(lay testimony based upon same).

Finally, the ALJ noted that Tlaker is not an acceptable medical source, and that reports and findings of psychologists Drs. Wahl and Shellman contradicted Tlaker's statement that Witt is disabled. Tr. 29. The ALJ was correct in characterizing Tlaker, a welfare agency caseworker without social worker or nursing credentials, as an "other," non-medical, source. 20 C.F.R. 416.913(d)(3). The ALJ therefore properly gave greater weight to the opinion of psychologists over Tlaker.

In summary, Witt fails to show that the ALJ improperly assessed Tlaker's November 3, 2006

report as it pertains to her drug and alcohol use.

### e.    Hospital and Emergency Room Admissions

Finally, Witt cites numerous hospital and emergency room admissions reports in support of her argument that she would remain disabled without drug and alcohol use. Pl.'s Opening Br., 12-13.

Witt states that no psychiatrist thought that her marijuana use "was the proximate cause of her hospitalization," and that "several" of her admissions did not involve alcohol use. *Id.* at 12. This assertion mischaracterizes the relevant inquiry. The issue is not "proximate cause" relating to a specific hospital admission, but whether Witt would remain disabled if she ceased using drugs and alcohol. 20 C.F.R. § 416.935; *Parra*, 481 F.3d at 746-47. As noted, nearly all of Witt's hospital admissions cite drug and alcohol use, as a current diagnosis or by history. *Supra*, 11. The ALJ's finding that Witt's hospitalization records consistently cite drug and alcohol use is accurate and based on the record.

### C.    Conclusion: Drug and Alcohol Use

In summary, Witt fails to show that the ALJ erroneously assessed her drug and alcohol use. The ALJ's findings in this matter are based upon the record and the correct legal standards and, therefore, are affirmed.

## II.    Lay Witness Testimony

Witt challenges the ALJ's evaluation of testimony submitted by her husband, William Witt, and individuals Susan Henne, Lisa Cobb, and Linda and David Knight. Pl.'s Opening Br. 14-15.

///

**A.    Standards: Lay Testimony**

The ALJ has a duty to consider lay witness testimony.    20 C.F.R. §§ 416.913(d),

416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members in

a position to observe the claimant's symptoms and daily activities are competent to testify regarding

the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not

reject such testimony without comment and must give reasons germane to the witness for rejecting

her testimony.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  However, inconsistency

with the medical evidence may constitute a germane reason.  *Lewis*, 236 F.3d at 512.  The ALJ may

also reject lay testimony predicated upon the testimony of a claimant found not credible.  *Valentine*,

574 F.3d at 694.

**B.    Analysis**

The ALJ did not indicate his findings for each lay witness by name.  Tr. 30.  Instead, the ALJ

made the following assessment:

> For the same reasons that the claimant is herself not credible, any third
> party statements to the same effect must similarly be discounted.
> Specifically, the testimony offered at the hearing of November 2006
> cannot be accepted as valid.  Neither witness could account for the
> claimant's abuse of drugs and alcohol in her symptoms, and in fact
> claimed not to have seen her abuse substances, despite a long record
> of such abuse.

Tr. 30.  The ALJ also incorporated the findings made in the June 23, 2004 ALJ decision into the

present decision.  Tr. 22.  In that decision the ALJ rejected Susan Henne's testimony.  Tr. 557.

**a.    William Witt**

Witt's former husband, William Witt, completed a third party questionnaire on January 30,

2001. Tr. 104-15. Mr. Witt stated that Witt interacts with family members daily, and shops for groceries weekly. Tr. 105. He also stated that Witt gardens, cares for her dog, and performs housekeeping, *id.*, and uses the internet daily. Tr. 109. Regarding Witt's behavior, Mr. Witt wrote that Witt does not argue or act out, but has "serious problems" with authority figures such as doctors, nurses, psychologists, and government workers. Tr. 107, 114. Mr. Witt endorsed no difficulty in Witt's ability to prepare meals or perform personal care. Tr. 110-11. Mr. Witt stated that Witt takes her medications, and they control her manic episodes. Tr. 113. Finally, Mr. Witt stated that Witt has difficulty dealing with stress and "compulsive obsessive behavior" which contributes to her difficulties. Tr. 115.

Witt presently cites some, but not all, of these statements without explanation for the manner in which they establish disability under the Commissioner's regulations. Pl.'s Opening Br. 14. The ALJ's RFC restricted Witt's interaction with the public and assessed a moderate limitation in ability to follow detailed instructions. Tr. 21. Mr. Witt's testimony establishes no further work-related limitations omitted from Witt's RFC. This court may find an ALJ's omission of lay testimony harmless where it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability conclusion. *Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). Because Mr. Witt made no work-related limitations omitted by the ALJ, any omission by the ALJ pertaining to his testimony is harmless.

**b.    Susan Henne**

Susan Henne completed a form for the Oregon Department of Human Services on February 3, 2004. Tr. 168-75. Henne stated that she was Witt's caregiver for over one year (Tr. 175),

14 - OPINION AND ORDER

although she did not explain why Witt required a caregiver. Henne also stated that Witt performs housecleaning for friends, but has not performed steady work since Henne has been Witt's caregiver. Tr. 174.

Henne stated that Witt's mother and husband had no contact with her (Tr. 168), and that Witt leaves her home to shop with Henne. *Id.* Henne also stated that Witt goes to the grocery store once or twice a week, and does not often socialize with other people. Tr. 169. However, Henne also wrote that Witt gets along well with others and that friends visit her. *Id.* Henne stated that Witt has problems relating to psychiatrists and psychologists. Tr. 170.

Henne stated that Witt completed personal hygiene without assistance and household chores "when needed." Tr. 172. Finally, Henne stated that Witt takes Haldol and other medications "when needed" and that she does not need to be reminded to take medications. Tr. 173. Henne also stated that Witt's mood has improved since they met. Tr. 175.

Henne additionally wrote to the record on August 12, 2004. Tr. 598. There, Henne wrote that she had been Witt's personal caregiver under a state program for two years. *Id.* Henne stated, "I have observed that Jan's ability to work is very limited" due to her psychological impairment and "physical disabilities with her wrists, back and ankles." *Id.* Henne does not explain the manner in which these alleged impairments prevent Witt from working, stating only that they "cripple" her. *Id.*

The ALJ discussed Henne's hearing testimony in his June 23, 2004 decision (Tr. 557), which the ALJ incorporated into the April 11, 2007 decision under review. Tr. 22. The ALJ noted that Henne asserts that Witt is unable to work, but found this inconsistent with the medical record when

15 - OPINION AND ORDER

Witt is compliant with her medications. Tr. 557. The ALJ therefore gave Henne's statement "limited credence" because it was inconsistent with the medical record. *Id.*

The ALJ may reject lay testimony inconsistent with the medical record. *Lewis*, 236 F.3d at 512. Witt now asserts that she complained of wrist and back pain to medical providers, and that Henne's testimony is therefore consistent with the medical record. Pl.'s Opening Br. 16. However, Witt does not address the ALJ's finding regarding Henne's testimony and her medication compliance. *Id.* The ALJ's finding on this matter is properly based upon the record.

Further, the ALJ found that the lay witness testimony was predicated to a large extent upon Witt's unreliable testimony, and was also not credible for this reason. Tr. 30. This is an acceptable reason for rejecting lay testimony. *Valentine*, 574 F.3d at 694.

For both these reasons, the ALJ was appropriate in rejecting Henne's testimony.

### c.    Leesa Cobb

Leesa Cobb wrote a letter to the record on August 18, 2004. Tr. 599. She did not explain her relationship with Witt, but stated she has known Wit for three years and that Witt cannot work because her wrists are swollen and she easily twists her ankles. *Id.* Cobb also stated that Witt becomes very depressed during "other days of the month." *Id.* Consequently, Cobb asserts that Witt is unable to work. *Id.*

The ALJ did not mention Cobb's testimony. However, Cobb described no observed workplace limitations due to Witt's impairments. The value of lay testimony is predicated upon such observations. *Dodrill*, 12 F.3d at 918-19. Here, Cobb only stated that she believed Witt's reported wrist, ankle, and mood difficulties would prevent Witt from working. Tr. 599. Witt now points to

the medical record establishing that she previously complained of wrist and ankle pain to medical providers. Pl.'s Opening Br. 16. These citations do not establish that Cobb's limited statement described circumstances omitted from Witt's RFC assessment. Therefore, the ALJ's omission of Cobb's statement is harmless.

### d.    David and Linda Knight

Witt's friend, David Knight, testified at her November 13, 2006 hearing. Tr. 843-46. Knight stated that he had known Witt eight years, and that this relationship began when Witt worked as his housekeeper. Tr. 843-44. He stated that, at the time of the hearing, he saw Witt once a month and spoke to her on the phone when Witt called with problems regarding her daily life and mental condition. Tr. 844. David Knight explained that these conversations have the effect of calming Witt, and that Witt's mood at these times is "definitely depressed." Tr. 845. He also stated that Witt expressed non-specific suicidal thoughts. Tr. 845-46. Finally, David Knight stated that he had not seen Witt intoxicated. Tr. 846.

David Knight's wife, Linda Knight, also testified at Witt's November 13, 2006 hearing. Tr. 833-40. Linda Knight stated that she and her husband saw Witt approximately once a month, and that Witt calls when them when she is "having problems." Tr. 833. During these times, Linda Knight reported that her husband would speak to Witt for hours, and insinuated that he did this because the couple feared that Witt was suicidal. Tr. 834. Linda Knight also stated that Witt had threatened to drive her car off the road. Tr. 835.

Linda Knight testified that at times Witt is overwhelmed by getting out of bed and by the pressure of attending to appointments or changes to her schedule. Tr. 835-36, 838. She also stated

that Witt is "shaky," and that Witt is calmed by talking to David Knight. Tr. 837. Finally, Linda Knight stated that she has seen Witt intoxicated, but that because she and her husband did not drink themselves, they were unlikely to be near Witt when she was drinking. Tr. 839-40.

The ALJ cited the Knights's testimony and found their testimony not credible because Witt's testimony was not credible. Tr. 30. The ALJ may make such findings. *Valentine*, 574 F.3d at 694. While the ALJ's analysis was cursory, it is based upon the correct legal standard and supported by the record.

The ALJ also noted that the Knights' testimony regarding Witt's alcohol abuse was inconsistent with the alcohol abuse reported in the medical record. *Id.* The ALJ may reject lay testimony inconsistent with the medical record. *Lewis*, 236 F.3d at 512. As discussed above, the medical record supports the ALJ's findings regarding Witt's alcohol and drug use. Therefore, the ALJ's reasoning is also appropriate.

### C.    Conclusion

In summary, Witt fails to show that ALJ committed reversible error in his analysis, albeit cursory, of the lay testimony. The ALJ's findings are affirmed.

## IV.    The ALJ's Step Five Findings

Witt finally asserts that the ALJ failed to meet his evidentiary burden in finding that, absent her substance abuse, Witt could perform work in the national economy at step five[4] in the sequential proceedings. Pl.'s Opening Br. 17-18.

///

---

[4]The ALJ also found that Witt could perform her past relevant work at step four in the sequential proceedings (Tr. 31), which Witt does not challenge.

**A.    Step Five Standards**

At both steps four and five in the sequential proceedings, the ALJ may draw upon a vocational expert's testimony to show that claimant can perform work in the national economy. 20 C.F.R. §§ 416.960(b)(2); 416.966(e). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

**B.    Analysis**

The ALJ presently drew upon a vocational expert's testimony in finding that Witt could perform work as a clothing marker, packing line worker, and laundry folder. Tr. 31, 868. The ALJ based these questions upon Witt's RFC. Tr. 867.

Witt now asserts that the ALJ's questions to the vocational expert were deficient because the ALJ did not adequately consider Witt's credibility or the testimony of the lay witnesses. Pl.'s Opening Br. 18. Witt does not challenge the ALJ's evaluation of her credibility, or explain the manner in which her testimony establishes disability. Her assertion relating to her own testimony at step five in the sequential proceedings is therefore without merit.

Witt also asserts that the ALJ's step five findings omit limitations described by the numerous lay witnesses, as discussed above. Pl.'s Opening Br. 18. Witt again fails to explain to the court the manner in which this testimony establishes limitations improperly omitted from the ALJ's questions to the vocational expert.

Finally, Witt asserts that the vocational expert's testimony did not properly account for limitations assessed by psychology resident Dr. Hale and unidentified "treating therapists" at CCMH. Pl.'s Opening Br. 18. Witt specifically asserts that this evidence establishes she would be unable to

meet attendance standards, but does not point to the specific evidence establishing this limitation. *Id.* The vocational expert testified that exhibit B29F, which is the November 3, 2006 questionnaire completed by CCMH case manager Anne Tlaker, indicates that "attendance would be an issue." Tr. 870. The ALJ properly rejected Tlaker's opinion, as discussed above. The ALJ was therefore not obligated to include the indicated limitation in his questions to the vocational expert. *Osenbrock*, 240 F.3d at 1165.

Witt's step five argument does not point the court to any aspect of Dr. Hale's opinion which she now claims the ALJ omitted at step five. As discussed above, the ALJ properly assessed Dr. Hale's opinion regarding the effect of Witt's substance abuse. *Supra*, 8-9. Dr. Hale clearly stated that her indicated limitations applied *within* the context of Witt's alcohol abuse. Tr. 501. Witt fails to establish error in the ALJ's analysis of this opinion. Dr. Hale's opinion furthermore does not support Witt's submission that she remains disabled without consideration of her substance abuse.

In summary, the ALJ's properly relied upon the vocational expert's testimony in finding Witt not disabled at steps four and five in the sequential proceedings. The ALJ's step four and five findings are affirmed.

## **CONCLUSION**

The ALJ properly found Witt's drug and alcohol use material to any finding of disability. The Commissioner's subsequent decision that Witt did not suffer from disability, and is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision is AFFIRMED.

///

20 - OPINION AND ORDER

IT IS SO ORDERED.

Dated this 31st day of January, 2011.

Paul Papak
United States Magistrate Judge